## W. L. Dogan v. T. J. Cole.

1. Attachment. *Remedy by, not acquired by contract.*
   The right to resort to the remedy by attachment cannot be acquired, nor a new cause for such remedy be added to the statute by a contract between a creditor and his debtor.

2. Same. *Ground for. Case in judgment.*
   D. contemplated making an assignment for the benefit of his creditors, and communicated his intention to C., one of them. D., after consulting with his attorney, abandoned his intention in the presence of C., and consented that an attachment might issue against his estate in favor of C. Thereupon an attachment was issued upon an affidavit by C. that D. "has assigned or disposed of, or is about to assign or dispose of his property or rights in action, or some part thereof, with intent to defraud his creditors." *Held,* that the attachment was improperly sued out.

Appeal from the Circuit Court of Tippah County.

Hon. W. S. Featherston, Judge.

A statement of the case will be found in the opinion of the court.

*Spight & Marmon,* for the appellant.

1. There can be no estoppel in this case. There was no false representation or concealment of any material fact. Cole had as full knowledge of the *material* facts, if any, upon which an attachment could be predicated, as Dogan had. He had told him what he intended to do, and upon this (the contemplated assignment) the affidavit for the attachment was founded.

2. The most that can be made of this case, admitting that the testimony of the plaintiff was true that Dogan consented that the attachment might be sued out, is that he thereby *impliedly* promised not to dispute the grounds of the attachment *afterward.* In other words, that his *present intention* then was not to do so.

3. The remedy by attachment is an extraordinary one, and the grounds of its issuance are clearly defined by statute, and the courts have no power to engraft upon it additions or amendments, and under our statute *consent* is no ground for attachment, and such a construction would be against public policy. Any debtor could thus fraudulently authorize attachments so as to place his property

beyond the reach of his other creditors, and with intent to defraud them.

*J. W. T. Falkner*, for the appellee.

1. The consent of Dogan to the issuance of the attachment was an admission that he had either owned property or rights in action, which he was then concealing and unjustly refusing to apply to the payment of his debts; or that he had assigned or disposed of, or was then about to assign or dispose of, his property or rights in action, or some part thereof, with intent to defraud his creditors.

2. The theory of the appellant, that although he at one time had intended to assign his property as indicated in the testimony in this case, yet he had abandoned an idea of making an assignment when he consented to the attachment, is equally untenable as a defense to the attachment. The other creditors of Dogan might complain if there was a fraudulent agreement to permit the attachment; but having the right to do so under the laws of Mississippi, and having failed to interpose this claim in the court below in the mode pointed out by the law, surely Dogan ought not now to be allowed to take advantage of a right which he acquired by conduct or admission, made to Cole, whereby he was induced to do that from which he might now abstain.

*Chas. B. Howry*, on the same side.

1. Can an insolvent trader authorize or consent to the attachment of his property by a creditor and then claim that he is not estopped after he has thus permitted his creditors to act?

This is a question that need not be considered in the abstract, but should be determined with reference to the facts of this case. These facts show that the plaintiff in the attachment perpetrated no wrong on the defendant, sought no advantage, exercised no undue influence, used no persuasion, and resorted to no subterfuge or stratagem to gain the debtor's consent or to accomplish the result. But on the contrary, there is no room to doubt the entire good conduct of the plaintiff below throughout the transaction.

Can there be any doubt that Dogan's statements immediately preceding the suing out of the writs moved the plaintiff to act? that Dogan's language and conduct with reference to the debt of

his brother-in-law and others warranted the charges contained in the affidavit, that Cole believed them to be true, and that belief was caused by the declarations and conduct that night of Dogan himself. *Cocke* v. *Kuykendall,* 41 Miss. 65 ; *Morgan* v. *Nunes,* 54 Miss. 308 ; *Roach* v. *Brannon,* 57 Miss. 490.

COOPER, C. J., delivered the opinion of the court.

The appellant being in embarrassed circumstances, desired to make an assignment of his property for the benefit of his creditors, giving preferences to certain ones of them, among whom was the appellee, and distributing equally the remainder to his other creditors. He was a merchant, and the greater part of his estate consisted of a stock of goods in his store. In his opinion this stock of goods could be sold to better advantage by retailing them across the counter in the usual mode, and this mode of sale he proposed to direct to be followed in the assignment which he contemplated making. In this condition of affairs he sent for his attorneys, who repaired to his residence, where he was confined to his bed, accompanied by appellee and by the agent of another creditor. The appellee was one of the creditors whom the appellant had proposed to prefer in the contemplated assignment, and the agent of the other creditor was pressing to be included in the class of preferred creditors, if an assignment should be made, and threatening to attach if this was not done. At the consultation between these parties the attorney declared that the assignment which appellant desired to make would be invalid, that he would subject himself to attachment by its execution, and that he had already rendered himself liable to attachment. Upon what ground this subjection to attachment was supposed to have arisen is not suggested by the record, but we assume it was either because the appellant had proposed to make the assignment, or because he had offered to pay one of his creditors the whole or a part of his debt by the delivery to him of twenty bags of coffee from his stock of goods. Be this as it may, the attorney advised that as the assignment could not be legally made, the appellant should consent that attachments might issue against his estate. There is some conflict of evidence as to

whether the appellant consented to this; but since the testimony of the appellee was to the effect that he did, we must assume such to have been the case. In this interview, at which the appellee was present and participated, all idea of making the assignment was abandoned, and, according to his evidence, it was agreed that he and others should secure their claims by suing out attachments. From the residence of the appellant the appellee went with the attorney, who had been called in by appellant, to his office, where an affidavit was prepared, alleging that the appellant "has assigned or disposed of, or is about to assign or dispose of, his property or rights in action or some part thereof, with intent to defraud his creditors." On this affidavit the attachment was issued.

The defendant traversed the ground for suing out the writ, and on this issue the question involved arises, which is whether it was permissible for the defendant to deny the rightfulness of the attachment to which he consented. The court below held, in effect, that the defendant was estopped to controvert the fact averred by the plaintiff's affidavit, and there was a judgment in favor of the plaintiff.

There is no doubt that at and before the time when the affidavit was made for the writ the defendant had abandoned all idea of executing the assignment, and that this fact was well known to the plaintiff, who, according to his own testimony, resorted to the proceeding by attachment by agreement with the defendant—not because the defendant then intended to make any sort of transfer of his property, either honest or fraudulent, but because he had determined not to make the contemplated transfer, and to submit to attachment as the means of reaching the same end, to wit, the giving of a preference to the plaintiff so as to secure the payment of the debt due to him.

Taking the case as made by the evidence for the plaintiff, and it is indisputably shown that the attachment was sued out, not because the defendant was about to make the transfer, which his counsel had advised would be fraudulent if made, but because he was not about to make it. We are unable to perceive in what respect the assignment would have been fraudulent if it had been made; but

conceding that it would have been, all intention of executing it had been abandoned by the defendant, and in lieu of it the plaintiff was to sue out the attachment.  There is, therefore, a total absence of any evidence tending to prove that the defendant, as a matter of fact, was about to do any of those things which the statute condemns, and the doing of which would subject him to attachment, or that the plaintiff believed that he was about so to do.  There is no element of estoppel in the case.  The plaintiff did not believe that the defendant was about to dispose of his property with a fraudulent intent. He knew that he was not, and knowing this, he took such action as was permissible only to one who knew or believed the truth to be as declared in the affidavit.  The right to resort to attachment cannot be acquired by contract between parties, much the less can they in that manner add a new ground to the statute for suing out such process.  The statute declares that one who has made or is about to make a fraudulent transfer of his estate may be attached. The agreement between these parties, if in fact one was made, was that the plaintiff should attach because, on reflection, the defendant had determined not to make an assignment, which he had been advised would be fraudulent.

There was no allegation in the affidavit that the debt sued for had been fraudulently contracted, and all the evidence directed to that issue should have been excluded by the court on the objections made by the defendant.

*The judgment is reversed and cause remanded.*